OPINION OF THE COURT
Martin Evans, J.
In this mortgage foreclosure action, CMNY Capital Company, the defendant second mortgagee, seeks to prevent the payment of real estate transfer and gains taxes from the proceeds of the court-ordered sale. In the alternative, it seeks a new auction of the mortgaged premises. Trefoil Capital Company, the first mortgagee, and Penn Jackson Corp., the assignee of the successful purchaser, oppose CMNY’s motion.
At issue is a question of first impression: Who among the remaining parties must pay the newly enacted taxes where the prior owner, who, as a seller, would ordinarily be liable, is, by reason of the foreclosure, no longer involved? This motion requires the court to analyze the newly codified transfer and gains tax statutes within the context of the preexisting mortgage foreclosure statute. (See New York State real estate transfer tax, Tax Law, art 31, § 1400 et seq. [as amd by L 1983, ch 15]; New York State real *153 estate gains tax, Tax Law, art 31-B, § 1440 et seq. [as added by L1983, ch 15, as amd by L1983, ch 150]; New York City real property transfer tax, Administrative Code of City of New York, ch 46, tit II, § II46-1.0 et seq., as amd by L 1982, ch 57; cf. RPAPL art 13.)
The salient portions of these statutes are set forth as follows:
“New York State real estate transfer tax
“§ 1401. Definitions * * *
“(e) ‘Grantor’ means the person making, executing or delivering the deed.”
“§ 1404. Liability for tax
“(a) The real estate transfer tax shall be paid by the grantor. If the grantor has failed to pay the tax imposed by this article or if the grantor is exempt from such tax, the grantee shall have the duty to pay the tax.
“(b) For the purpose of the proper administration of this article and to prevent evasion of the tax hereby imposed, it shall be presumed that all deeds are taxable.”
New York State real property gains tax
“§ 1440. Definitions * * *
“3. ‘Gain’ means the difference between the consideration for the transfer of real property and the original purchase price of such property, where the consideration exceeds the original purchase price * * *
“7. ‘Transfer of real property’ means the transfer or transfers of any interest in real property by any method, including but not limited to sale, exchange, assignment, surrender, mortgage foreclosure, transfer in lieu of foreclosure”.
“§ 1441. Imposition of tax. A tax is hereby imposed on gains derived from the transfer of real property within the state. The tax shall be at the rate of ten percent of the gain.”
“§ 1442. Payment of the tax. The tax imposed by this article shall be paid by the transferor to the tax commission, or to any agent of such commission appointed pursuant to section fourteen hundred forty-nine-b of this article, on the date of transfer.”
*154 “§ 1443. Exemptions
“No tax shall be imposed in the following cases:
“1. If the consideration is less than one million dollars.”
New York City real property transfer tax
“§ 1146-1.0 Definitions * * *
“9. ‘Grantor.’ The person making, executing or delivering the deed.”
“§ II46-2.0 Imposition of tax. — A tax is hereby imposed on each deed at the time of delivery by a grantor to a grantee when the consideration for the real property and any improvement thereon (whether or not included in the same deed) exceeds twenty-five thousand dollars. The tax shall be * * *
“(5) at the rate of one percent of the consideration with respect to conveyances made on or after July first, nineteen hundred eighty-two of one, two or three-family houses and individual residential condominium units”.
“§ II46-4.0 Payment. — The tax imposed hereunder shall be paid by the grantor to the commissioner of finance at the office of the register in the county where the deed is or would be recorded within thirty days after the delivery of the deed by the grantor to the grantee but before the recording of such deed. The grantee shall also be liable for the payment of such tax in the event that the amount of tax due is not paid by the grantor or the grantor is exempt from tax.”
In October, 1983, plaintiff Trefoil commenced a foreclosure proceeding on the first mortgage on real property, improved with a residence, at 46 West 11th Street, in Greenwich Village. The property was then owned by the mortgagor defendant, Creed Taylor, Inc. CMNY was joined as a defendant because of its position as second mortgagee of said property.
Pursuant to judgment of foreclosure and sale a public auction was held on April 13, 1984. Dr. Mary Ann Tsao was the successful bidder for the mortgaged premises. Dr. Tsao’s successful bid exceeded one million dollars, thereby triggering the statutory obligation to pay the gains tax. (Tax Law, § 1443.) Dr. Tsao has since assigned her rights to the property to Penn Jackson Corp., which asserts that it *155 expected to receive a recordable deed and marketable title. It assumed that the gains and transfer taxes would be deemed “expenses of the sale” (RPAPL 1351, subd 2) and thus would be paid out of the proceeds. CMNY, however, believes that these taxes should be paid by the purchaser rather than from the corpus of the foreclosed estate. Penn Jackson argues that the court-appointed referee is the transferor, with the obligation to satisfy the taxes from the surplus moneys of the sale. CMNY views the defaulting mortgagor, the foreclosed prior owner, as the transferor. Under CMNY’s view, the obligation to pay would necessarily devolve upon the purchaser, since the foreclosed mortgagor is not a likely source of payment.
The court must first decide whether a mortgage foreclosure sale is a transfer of real property within the meaning of the real property gains and transfer tax statutes. If such a sale is deemed to be a transfer, who then is the “transferor” having the duty to pay the taxes imposed by these recently enacted statutes? Are the gains and transfer taxes to be deemed expenses of the sale? Finally, the court must evaluate the statutes to decide whether the parties have been afforded adequate notice of their rights and obligations.
CMNY asserts that because the Real Property Actions and Proceedings Law predated the transfer and gains tax statutes, the RPAPL did not envision them and therefore cannot direct payment under them. The court must assume, however, that the Legislature considered the existence of prior law when it enacted the new taxes.[1] Although this question arises due to the alleged “lack of harmony” between the tax statutes and the mortgage foreclosure statute, the four laws are in pari materia, and the court should not frustrate the apparent intent of the Legislature.
*156 Furthermore, the tax statutes and the RPAPL may easily be harmonized by examining the language common to each of these statutes. “‘Grantor’ means the person making, executing or delivering the deed.” (Tax Law, § 1401, subd [e].)[2] In the statutes under analysis, it appears that the terms “grantor” and “transferor” are used interchangeably. “Grantor” has been legislatively defined (see Administrative Code, § II46-1.0, subd 9; Tax Law, § 1401, subd [e]); although used in the gains tax statute, “transferor” is an undefined term. “After the property has been sold, the officer conducting the sale shall execute a deed to the purchaser.” (RPAPL 1353, subd 1.) The payment of the transfer tax has been made a condition precedent to the recordation of a deed. (Tax Law, § 1403, subd [d].) Moreover, it is provided that the recording officer cannot accept a deed for recording unless the gains and transfer taxes are paid. (Real Property Law, § 333.)
Under the transfer tax statutes, the law clearly imposes the obligation to pay the taxes on the “grantor” or the “transferor”. (Tax Law, § 1404, subd [a]; Administrative Code, § II46-4.0.) It is equally clear that, in the context of a mortgage foreclosure sale, under the statutes at issue, the referee is the grantor/transferor since it is he who executes and delivers the deed. (See RPAPL 1353, subd 1; Tax Law, § 1401, subd [e].) Indeed it is the referee’s primary function, as a judicial delegate, not only to conduct the sale, but to convey title free and clear of the prior outstanding debts and obligations — something which the prior owner is either unable or unwilling to do. (See Willets v Van Alst, 26 How Prac 325; see, also, Crisona v Macaluso, 33 AD2d 569.) Where the written contract between the referee and the highest bidder does not contain an agreement that the purchaser will pay the tax, and there is no clause relieving the referee from doing so, the referee has the obligation to pay such taxes out of the proceeds of the sale. Therefore, both law and logic dictate that it is the referee who has the responsibility to pay the transfer and gains taxes at issue.
Because the referee acts as a judicial officer in a representative capacity, there is no statutory intent to enforce *157 these obligations personally against the referee-grantor; the only possible fund from which he could make payment is the surplus arising from the sale.
Under predecessor statutes, referees have deducted, from the purchase price, sums sufficient for payment of real estate and water taxes. (Rikoon v Two Boro Dress, 9 Misc 2d 591, 593, mod on other grounds 9 AD2d 783.) In Rikoon, the tax was held to be an expense of the sale and foreseeable as such to anyone having notice of the sale.
“Expenses of the sale” is used as a term of art, although it is not statutorily defined it has been given broad judicial interpretation. (See, e.g., Rikoon v Two Boro Dress, supra.) Some of the expenses of the sale are enumerated in RPAPL 1354 (subds 1, 2), but the list is not all-inclusive.
Under the gains tax, the term “transfer of real property” includes mortgage foreclosure. (Tax Law, § 1440, subd 7.) The tax imposed by article 31-B is to be paid by the transferor. (Tax Law, § 1442.) Because the gains tax statute expressly contemplates transfer by mortgage foreclosure, the conclusion must be the same as under the transfer tax statutes: the referee must pay the gains tax, in addition to the transfer taxes, from the proceeds of the sale.
The New York City transfer tax statute is fully consistent with the State transfer and gains tax statutes, with which it forms a harmonious, coordinated system of taxation. The city transfer tax imposes on the grantor the duty to pay; the term “grantor” is defined at section 1146-1.0 (subd 9), which adopts the language of the State version. Again, the same conclusion follows: the referee has the duty to pay the city transfer tax out of the proceeds of the mortgage foreclosure sale.
A good-faith purchaser for value is entitled to receive a deed in recordable form. The law favors stability of titles acquired at foreclosure sales. (Hammerman v Ferguson, 50 AD2d 853, app dsmd 39 NY2d 797.) Therefore, precedent and public policy considerations indicate that Penn Jackson may expect its liability to be limited to the amount of the successful bid at auction. Necessarily, the referee must first remove all impediments to this end. A second or subsequent mortgagee, such as CMNY here, is then entitled to its share of the proceeds after any impediments to *158 conveyance of good title have been eliminated. (Wesselman v Engel Co., 309 NY 27, 30.) In Wesselman, the Court of Appeals has so interpreted the predecessor to the current RPAPL 1354 (subd 2) (Civ Prac Act, § 1077 et seq.). There appears to be no reason for this court to arrive at a different result under the successor statute.
In the alternative, CMNY has requested that the court should exercise its equitable power to set aside the foreclosure sale for failure to comply with the requirements of notice set forth in CPLR 2003. CMNY has not met its burden of proof as to any alleged irregularity of the sale, and has not made a sufficient showing to invoke the equitable powers of the court. The sale appears to have been regular in every respect. (See 15 Carmody-Wait 2d, NY Prac, §• 92:342.) It has been claimed that the sale is defective due to lack of “clarity” regarding the duty to pay the taxes. The alleged lack of “clarity” is not tantamount to lack of proper notice as a matter of law. It is hornbook law that not every legal consequence of the sale need be enumerated in the notice of foreclosure and sale. The parties to the transaction at issue were represented by experienced counsel; they are presumed to understand their rights and obligations under applicable law.
Furthermore, were this court to reach the conclusion that CMNY would have it reach, an anomalous result would follow. Under CMNY’s tortured construction, Penn Jackson would be liable for the transfer taxes twice: First, as buyer, on the purchase in question and then again, on any possible subsequent resale. Such a result would be not only illogical, it would be manifestly unfair. There is no evidence that such a result was intended or envisioned.
In conclusion, the court holds that a mortgage foreclosure sale is a transfer of real property within the meaning of the transfer and gains tax statutes; the referee is the transferor/grantor and has the duty to pay those taxes as expenses of the sale from the proceeds of the sale. The statutory scheme embracing the tax statutes and the RPAPL affords the parties adequate notice both of the duty to pay the taxes at issue, and of the identity of the party having the duty to pay. Accordingly, CMNY’s application is denied in its entirety.
*159 Settle order directing that the sale be consummated pursuant to the memorandum of sale executed by the referee, and that the referee pay the correct transfer and gains taxes out of the proceeds of the sale conducted on April 13, 1984.

. Commentary accompanying Governor Cuomo’s Program Bill No. 195 (S. 10119, A. 11969 [1984]) has been cited by CMNY in support of its position. That bill has been passed by the Legislature on June 28, 1984, but as yet has not been signed into law; therefore, it is not binding on this court. In no event would the commentary be binding on this court unless separately enacted. The commentary somewhat inaccurately indicates that the bill is intended to place the duty to pay the gains and transfer taxes, in the context of a mortgage foreclosure sale, upon the referee. It claims that this procedure will be a “radical departure” from the law as it now exists. While it is quite true that the defaulting mortgagor is likely to be unable or unwilling to pay, the court cannot agree with the premise that the defaulting mortgagor is the transferor under current law.

. Should a court-appointed third party, such as a referee or a Sheriff, be the “person making, executing or delivering the deed”, and if that third party shall have insufficient funds to pay the transfer taxes, he shall be responsible to pay only such amounts which have been realized from the sale.