■ TREFOIL CAPITAL CORPORATION, Respondent, v CREED TAYLOR, INC., et al., Respondents, and CMNY CAPITAL COMPANY, INC., Appellant.—Order of the Supreme Court, New York County (Martin Evans, J.), entered November 28, 1984, which denied the request of defendant-appellant, CMNY Capital Company, Inc., for renewal and vacatur of the previous order of said court, entered August 20, 1984, which directed that in this foreclosure action the Referee pay the New York State real estate transfer gains tax (hereinafter gains tax) out of the proceeds of the sale prior to satisfying the amount due to

defendant-appellant as subordinate mortgagee, is unanimously reversed, on the law, without costs and disbursements, insofar as appealed from and as limited by defendant-appellant's briefs, renewal is granted and, upon renewal, defendant-appellant's motion for a declaration granted to the extent of declaring that it was unlawful for the Referee to pay the $90,450 gains tax from the sale proceeds prior to satisfying the second mortgage, and the State is directed to forward the $90,450 plus interest to defendant-appellant. Appeal from the order of said court, entered August 20, 1984, is dismissed as superseded by the appeal from the order of November 28, 1984.

Plaintiff Trefoil Capital Corporation (hereinafter Trefoil) held a first mortgage on the townhouse home of Creed Taylor, owned by Creed Taylor, Inc. Defendant-appellant, CMNY Capital Company, Inc. (hereinafter CMNY), held a second mortgage on the property for approximately $350,000. Upon owner-mortgagor's default on the first mortgage, Trefoil commenced this foreclosure action in October 1983, joining as defendants the State and City of New York, because of the possibility of tax liens on the property, and the second mortgagee CMNY. By judgment entered March 19, 1984, Trefoil obtained a judgment of foreclosure and sale, entitling it to $709,919.37 plus interest. The Referee appointed pursuant to that order announced, by notice of sale dated March 22, 1984, that a public auction would take place on April 13, 1984.

At the auction, CMNY participated in the bidding up to $1,060,000, which it believed was sufficient to have the second mortgage satisfied after payment of the first mortgage and incidental expenses of the sale. Mary Ann Tsa won the bidding at $1,070,000 and later transferred her purchase rights to Penn Jackson Corp.

In May 1984, CMNY learned that the State Department of Taxation, the first mortgagee, the purchaser at the auction, and the Referee were all taking the position that the $90,450 due on the gains tax, pursuant to Tax Law article 31-B (§ 1440 *et seq.)*, was payable by the Referee out of what would otherwise be surplus moneys available to satisfy CMNY's second mortgage.

Thus, within this action to foreclose the first mortgage, CMNY moved, by order to show cause, to prevent the impending consummation of the sale and specifically sought a declaration that it was unlawful for the Referee to diminish the sale proceeds by paying the gains tax when he was not authorized to do so under then-existing RPAPL 1354, the statute which directs distribution of the proceeds of a foreclo-

sure sale. At that time, RPAPL 1354 did not specifically provide for a method of paying the gains tax, since that statute was enacted prior to enactment of the Gains Tax Law. Alternatively, CMNY sought to set aside the April 13 auction and sale and stay delivery of the Referee's deed pending a new sale, because the Referee's terms of sale had not stated that the gains tax, which was not a lien upon the premises, would be paid out of the sale proceeds. Supreme Court Justice Jawn A. Sandifer granted a temporary restraining order barring the Referee's transfer of the deed pending hearing of the motion, on condition that CMNY post a $100,000 undertaking.

Trefoil and the purchaser, Penn Jackson Corp., opposed the motion and argued that because the Referee held the proceeds of the sale, he should pay the gains tax. By decision dated August 8, 1984, Justice Martin Evans denied CMNY's motion. The court noted that while Tax Law § 1442 requires that the "transferor" pay the gains tax, the statute does not define "transferor". The court determined that in a foreclosure sale the Referee was the transferor and that the only possible funds from which he could pay the gains tax were the proceeds of the sale. The court further ruled that pursuant to then RPAPL 1354 (1), the gains tax was an expense of the sale, which was to be paid prior to satisfying the second mortgage.

Prior to entry of Special Term's decision, the State Legislature, on June 28, 1984, passed a bill proposed by the Governor to amend certain sections of the Gains Tax Law and RPAPL 1354. The Governor signed the bill into law on August 5, 1984, with an effective date of September 4, 1984 applicable to all real property transfers occurring on or after that date. (L 1984, ch 900, §§ 21, 22, 25.) RPAPL 1354 was amended to provide that after the Referee paid the expenses of the sale and the foreclosed debt (the first priority), and paid all taxes which were liens on the property (the second priority), the Referee would then, to the extent possible from the remaining proceeds, satisfy any subordinate mortgage. The amended statute further provides that after satisfaction of any subordinate mortgage, the Referee will then pay the gains tax. (RPAPL 1354 [1], [2], [3].)

By notice of motion dated September 24, 1984 and served upon the first mortgagee, the purchaser, the Referee, the prior owner, and the State and City of New York, CMNY moved to renew and to bar consummation of the sale on the basis, *inter alia,* that the amended RPAPL 1354 explicitly prohibited the Referee from paying the gains tax prior to satisfying a second

mortgage. No party opposed CMNY's renewal motion. At the time of the motion the sale had not yet been consummated, as is borne out by the fact that the deed to the subject property, of which fact we take judicial notice, was not executed until November 7, 1984. Nevertheless, Justice Evans, by order entered November 28, 1984, denied the motion. The court interpreted the new statute as supportive of its initial order in that it provided that the Referee could pay the gains tax from the proceeds of the sale.

On November 7, 1984, the deed was executed. After payment of the primary mortgage and expenses of the sale, the $90,450 gains tax, the $21,400 city transfer tax and the $4,280 State transfer tax, the Referee was left with $169,329 with which to satisfy CMNY's $350,000 mortgage. On appeal, CMNY argues that the Referee's payment of the gains tax violated RPAPL 1354 as it existed at the time of the April 13, 1984, auction and violated the newly amended RPAPL 1354, which became effective prior to final consummation of the sale. CMNY further claims that the proper relief is to grant it restitution pursuant to CPLR 5523, by ordering that the State of New York forward to CMNY the $90,450 unlawfully paid to the State. CMNY does not contest the Referee's payment of the city or State transfer taxes. Despite the fact that the first mortgagee, the purchaser and the State and City of New York have been served with CMNY's appellate briefs, none of these parties has filed a respondent's brief.

We need not reach the question of whether the prior law authorized or required the Referee to pay the gains tax out of the proceeds of a foreclosure sale, since under these facts, the transfer of the subject property clearly did not take place until after September 4, 1984, rendering fully applicable the amended RPAPL 1354.

The deed to the subject property, the document by which an interest in real property is transferred (Tax Law § 1401 [b]), was not executed until November 7, 1984. Under the Gains Tax Law it is the transfer of real property which gives rise to the obligation to pay the gains tax (Tax Law § 1441). The timing of the transfer is the event which then determines whether the amended RPAPL 1354 applies. Since the transfer here took place on November 7, 1984, the amended RPAPL 1354 plainly applies and even more plainly requires us to reverse. Amended RPAPL 1354 provides that the Referee must satisfy the debt of the second mortgagee prior to paying the gains tax. On the renewal motion the court below, while correct in finding that the new law explicitly permits the

Referee to pay the gains tax, nevertheless failed to apply the priority payment system established by the new law and erroneously adhered to its original determination of directing the Referee to pay the gains tax prior to paying the second mortgage.

To correct this error CMNY now seeks restitution from the State in the amount of $90,450 plus interest. We believe restitution is proper here. CPLR 5523 provides that "[a] court reversing or modifying a final judgment or order or affirming such a reversal or modification may order restitution of property or rights lost by the judgment or order". The State, which has been on notice throughout this action and is aware of defendant-appellant's request for restitution, nevertheless has interposed no objection on appeal. We may assume from this that the State does not contest this relief. Defendant-appellant's right to have the $90,450 applied to satisfy its mortgage rather than the gains tax was abrogated by the order below. Since the foreclosure sale by operation of law nullified the lien CMNY had on the property, CMNY has no recourse other than to seek a transfer to it of the moneys improperly paid to the State. Rather than require further wasteful proceedings to recover these moneys, to which CMNY is clearly entitled, CPLR 5523 contemplates that this court grant relief when it can be done forthwith.

Accordingly, we declare that it was unlawful for the Referee to pay the gains tax from the sale proceeds prior to satisfying the second mortgage and direct that the State forward to CMNY the $90,450, plus interest, that was improperly paid to the State. Concur—Sullivan, J. P., Carro, Fein, Milonas and Ellerin, JJ. [See, 125 Misc 2d 152.]